IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NILDA I. AGOSTINI CISCO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CIVIL NO. 11-1950 (CVR) |

**OPINION AND ORDER**

**INTRODUCTION**

On September 27, 2011, plaintiff Nilda I. Agostini-Cisco (hereafter plaintiff "Agostini-Cisco") filed the above action to obtain judicial review of the final decision of the defendant, the Commissioner of Social Security (hereafter "Commissioner"), denying the application for a protected period of disability and corresponding benefits. (Docket No. 1). On May 24, 2012, the Commissioner filed the answer to the Complaint with copy of the administrative record. On October 12, 2011, the Court ordered the Clerk to randomly assign the case to a Magistrate Judge as an implied consent upon plaintiff having failed to inform by October 5, 2011 whether she consented to jurisdiction. (Docket Nos. 5, 6, and 7). On September 19, 2012, plaintiff filed the corresponding memorandum of law and the Commissioner filed his memorandum on February 7, 2013. On February 8, 2013, counsel Salvador Medina-De La Cruz for plaintiff filed a motion consenting to jurisdiction by this Magistrate Judge. (Docket Nos. 27 and 29). It is now proper to dispose of the issues raised in the present action.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

On March 13, 2007, plaintiff Agostini-Cisco filed an application for a period of disability with onset date of October 26, 2004 which was denied initially and upon reconsideration. Thereafter, the requested administrative hearing was held on October 8, 2009. After considering the evidence of record and the testimonies of the medical and vocational experts, the presiding Administrative Law Judge (hereafter "ALJ") issued an opinion finding Agostini-Cisco was not under disability.

Plaintiff Agostini-Cisco is insured for disability purposes up to March 31, 2010. She claims the impairments resulting from mitral valve prolapse, high blood pressure, cervical and back condition and a depressive disorder resulted in a disability to perform substantial gainful activity as of onset date of October 26, 2004.

In the ALJ's opinion issued on November 3, 2009, the ALJ determined at step one of the required sequential evaluation process that Agostini-Cisco had not engaged in gainful activity since alleged date of disability. It was also found she had severe impairments as to her back, neck and left ankle as well as a severe depressive disorder but did not have an impairment or combination thereof that could meet the requirements for the Listing of Impairments. Appendix 1, 20 C.F.R. Part 404, Subpart P. Considering the available medical evidence, the ALJ found plaintiff Agostini-Cisco retained the residual functional capacity to perform work within the range of light type of work, which was consonant, at step four, with her previous relevant work as a sewing machine operator. As such, the ALJ concluded plaintiff Agostini-Cisco was not under disability for she retained the capacity to perform her past relevant work. The ALJ did not continue to step five of the sequential

evaluation process because the ALJ concluded plaintiff Agostini-Cisco was not disabled at step four. The Appeals Council denied review, rendering the ALJ's decision the final decision of the Commissioner.

Seeking judicial review, plaintiff Agostini-Cisco submits the ALJ's decision did not comply with application of the correct legal standard and it lacks substantial evidence in support. The Commissioner's memorandum of law objects both contentions.

**THE ALJ'S DECISION AND THE APPEALS COUNCIL**

The ALJ applied the evaluation process mandated by law, insofar as concluding that plaintiff Agostini-Cisco: (1) met the non-disability requirements for a period of disability and disability insurance benefits up through March 31, 2010; (2) had not engaged in substantial gainful activity since the alleged onset date of disability of October 26, 2004; (3) allegations of severe impairments or combination thereof had more than a minimal affect on her ability to perform basic work-related activities constituting severe impairments, but plaintiff did not have an impairment or combination that meets or equals the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) upon consideration of the entire record, plaintiff Agostini-Cisco retained the residual functional capacity to perform the full range of light type of work. Considering plaintiff's residual functional capacity for light work, the ALJ determined she could perform her previous job as a sewing machine operator, and as such, there was no need to continue up to step 5 to find if there were jobs available within the residual functional capacity for light/sedentary work.

The ALJ also discussed the available medical evidence regarding plaintiff Agostini-Cisco's mental condition. The ALJ referred plaintiff had moderate restrictions in activities

of daily living. Notwithstanding, the record showed she could prepare breakfast and light meals for the family, would watch television, feed the cat, do the laundry and dishes. As to activities dealing with social functioning, plaintiff had moderate difficulties and she related well with her husband and son, drove short distances and went out weekly to buy medication and groceries. (Docket No. 10, Transcript, p. 23). The ALJ indicated there was no evidence of hospitalization. Plaintiff Agostini-Cisco was assessed upon the medical record that she had adequate thought process, there was no evidence of intellectual or personality deterioration and no perceptual disorders or delusions. She provided adequate and detail descriptions of her symptoms and work history at different interviews. Although Agostini-Cisco had been depressed and anxious, there were no emergency room visits and her mental treatment was ambulatory and limited in scope. (*Id.*).

Plaintiff Agostini-Cisco also received treatment from Dr. Ariel Rojas (hereafter "Dr. Rojas"), a psychiatrist, since May 10, 2007 for complaints of insomnia, sadness, loss of interest, lack of concentration and frequent crying spells. Dr. Rojas' report of July 16, 2007 found the patient tense, with motor retardation, with depressed affect and mood, but she was coherent, relevant, with logical thought process, oriented in the three spheres and with preserved memory with good insight. (Docket No. 10, Transcript, p. 25).

Insofar as the neck and back condition, the ALJ concluded the record revealed a history of back and cervical pain due to the sitting position at her job. Cervical pain irradiated to upper extremities. Plaintiff Agostini-Cisco received treatment through the State Insurance Fund (hereafter "SIF") since 2004. An MRI of the spine revealed central disc protrusion at C4-C5 and C5-C6 levels with indents to the ventral dural sac. Plaintiff

received therapy, medication and epidural blocks for the pain. The condition improved but she developed a mental condition that was also treated at the SIF, diagnosed as depressive disorder.

Agostini-Cisco also presented a cardiovascular condition. Cardiologist Dr. Grace Marini (hereafter "Dr. Marini") treated and diagnosed the condition on January 13, 2003 as mitral valve prolapse and hyperlipidemia. There were complaints of burning chest pain radiating to the back, precipitated by stress and alleviated by rest. The complaints were also of palpitations, fatigue and weakness. The cardiologist indicated plaintiff Agostini-Cisco was able to walk two blocks, sit for two hours and stand for five minutes. She should not lift or carry more than ten pounds, rarely twist, stoop, crouch or climb and was to avoid exposure to extreme temperatures, noises, fumes, odors, and hazards such as moving machinery and unprotected heights. (*Id.*, pp. 24-25).

An internist, Dr. Geraldo González (hereafter "Dr. González"), treated plaintiff Agostini-Cisco since January 4, 2008 for the back condition. There was evidence by X-rays of thoracic scoliosis. Likewise, medical evidence revealed left ankle and foot presented plantar and posterior calcaneal spur formation at the distal tibia, suggesting bone island. An MRI of the lumbar spine of September 15, 2009 revealed degenerative end plate changes at L4-L5, mild degenerative facet changes at L5-S1 level and small posterolateral disc herniation at L2-L3 level. The patient manifested muscle spasms and weakness, spastic gait, sensory and reflex changes and lack of coordination involving mainly the neck and back, with headaches associated with the cervical condition. (Docket No. 10, Transcript p. 25).

In consideration of the medical evidence of record, the ALJ concluded that Agostini-Cisco's cervical and back condition was not of disabling severity. The discogenic disc disease and muscle spasms responded to medication and to conservative treatment, including physical therapy and epidural blocks. Additionally, the ALJ noted plaintiff Agostini-Cisco continued to work while under said treatment for these conditions. As to the mental condition, the same did not restrict plaintiff's activities of daily living or social functioning, was controlled with medication and did not affect concentration, persistence and pace. The arterial hypertension was under control.

Dr. Antonio Aponte (hereafter "Dr. Aponte") , an examining Internal Medicine specialist, upon examination on September 24, 2007, found no limitation for walking, standing, sitting, lifting, carrying or handling. Another examination by Dr. Armando Caro (hereafter "Dr. Caro"), a psychiatrist, described the patient with good eye contact, normal speech, appropriate affect, neutral mood, preserved memory, oriented, with no hallucination. She also presented fair concentration, judgment and insight. Dr. Caro diagnosed a moderate major depression, with good prognosis. Medications were reported to improve sleep and decrease anxiety. (*Id.*, p. 26).

Considering all the above medical evidence, the ALJ determined the residual functional capacity was supported by the evidence of record as to ability to perform light work, but limited to lifting no more than ten pounds frequently and twenty pounds occasionally, carrying from five to seven pounds frequently, pushing and pulling up to five pounds, stand and walk for up to six hours in terms of an eight hour workday in an environment without significant changes in temperature and without chemical or strong

odors. She was mentally limited to perform simple, repetitive tasks, without contact with the public and only occasional contact with other workers and supervisors. (*Id*.).

Since Agostini-Cisco's previous relevant work as sewing machine operator did not require performance of work related activities precluded by her residual functional capacity, the ALJ found plaintiff was able to perform same. Through the testimony of the vocational expert, Dr. Héctor Puig (hereafter "Dr. Puig"), it was further ruled the previous job performed by plaintiff was low, semi-skilled in physical and mental demands and fell within the light level of exertion. (Docket No. 10, Transcript pp. 48-51). Having determined plaintiff Agostini-Cisco could still perform her past relevant work, the ALJ's above findings concluded that plaintiff was not considered disabled.

**LEGAL ANALYSIS**

The Court's review is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *See* Manso-Pizarro v. Secretary of Health and Human Services, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); Da Rosa v. Secretary of Health and Human Services, 803 F.2d 24, 26 (1st Cir. 1986); Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that she is disabled within the meaning of the Social Security Act. *See* Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the

Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied in making a final determination as to whether a claimant is or not disabled. 20 C.F.R. §§ 404.1520; *see* Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); Goodermote v. Sec. of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. §§ 404.1520(b). If not, the decision-maker proceeds to step two, through which it is determined whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of

impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant is able to perform his/her previous work, he/she is not disabled. §§ 404.1520(e). If it is determined that the claimant cannot perform this work, then the fifth and final step of the process demands a determination on whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform other work. §§ 404.1520(f). The ALJ in the instant case examined and analyzed plaintiff Agostini-Cisco following up to the fourth step above described.

The claimant has the burden, under steps one through four, of proving that he/she cannot return to his/her former employment because of the alleged disability. Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991). In the present case, the ALJ found plaintiff Agostini-Cisco able to perform her previous past relevant work as sewing machine operator and, thus, did not need to continue examination after said step four consideration. By determining the residual functional capacity for full range of light

level of exertion, which logically follows also able to perform sedentary type of work, and upon the testimony of a vocational expert, the ALJ concluded the past relevant work was not precluded by the limitations imposed by plaintiff Agostini-Cisco's exertional and non-exertional conditions. The ALJ opined plaintiff was not under disability and the Appeals Council thereafter affirmed.

Counsel for plaintiff Medina De-La Cruz discussed in the memorandum of law the ALJ did not deploy the proper legal standard and there was no discussion if plaintiff could still perform other alternate work. (Docket No. 21, p. 2). Plaintiff's memorandum of law further discussed the same medical evidence, treatment and diagnosis considered by the ALJ, but concludes there was no substantial evidenced in support of the administrative decision denying her application.

In addition to the above discussed medical evidence of Dr. Marini, González and Aponte, plaintiff refers to Dr. German Malaret (hereafter "Dr. Malaret"), an internist, who testified during the administrative hearing insofar as plaintiff was limited to lifting no more than ten pounds frequently and twenty pounds occasionally. Due to plaintiff's asthma, she could not tolerate extreme temperature, dust or chemical. (*Id.*, p. 5). Plaintiff refers to the ALJ's determination she could still perform past relevant work as sewing machine operator at step four of the evaluation process, as a generic statement for failure to perform a function to function comparison. (*Id.*, pp. 8-9).

The Commissioner objected to statement as to failure to establish how an occupation is generally performed for the testimony of Dr. Malaret, as well as consultative opinion of Dr. Aponte, which referred to plaintiff's ability without limitations as to walking, standing,

sitting, lifting, carrying and handling objects, as well as the weight exertion falling within the requirements of a sewing machine operator job. (Docket No. 26, pp. 9-10). The assessments of Dr. Aponte and Dr. Malaret were deemed sufficient for the ALJ to conclude the exertional capacities of plaintiff for light type of work.

Similarly, the mental ability assessed by the ALJ as being nearly normal was supported by the report of Dr. Carol, an examining consultative psychiatrist. This was also substantiated by the opinion of Dr. Piñeiro, a state agency psychological consultant, who upon review of the medical evidence did not preclude the ALJ's finding that plaintiff could sustain pace and concentration, adjust to changes in work setting, understand, remember and carry out simple and detail instructions. (Docket No. 26, pp. 11-12). The ALJ took into consideration that plaintiff Agostini-Cisco complained of depression, but psychiatric treatment showed in January 2007 that after five sessions with Dr. Carmen Cotto her mental condition was stable with medication and she was discharged. (*Id.*, p. 13). The Commissioner discussed how the ALJ fully evaluated the physical and mental demands of plaintiff's past relevant work and compared them to plaintiff's residual functional capacity by referring to the vocational expert's testimony. (*Id.*, p. 14).

A review of the administrative hearing transcript indeed reveals Dr. Puig, the vocational expert, testified plaintiff's work as sewing machine operator, a job she had performed during the last 25 years, had no transferability of skills and was light, because only occasionally surpasses ten pounds in exertion. (Docket No. 10, Transcript, pp. 48-49). The sewing job was mainly done seated, which plaintiff was not precluded, nor exceeded plaintiff's limitations as to lifting and carrying, pulling and pushing.

As to any limitations from plaintiff's mental condition, plaintiff was not to have contact with people. The sewing job was done only with the machine and the fabric. (*Id.*, p. 50). The ALJ also indicated the presence of mild pain would not affect performance either. (*Id.*, p. 51).

Plaintiff Agostini-Cisco must prove disability claimed is serious enough to prevent performance of the former jobs at the fourth level of the sequential evaluation process and it is only at the fifth stage that the Commissioner bears the burden to show there are other jobs in the economy that plaintiff can nonetheless perform.[1] Goodermore v. Secretary of Health & Human Servs., 690 F.2d 5, 7 (1st Cir. 1982). At step four, it is the claimant who must show that she can no longer perform her former work because of the impairments. Santiago v. Secretary of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).

The record shows plaintiff Agostini-Cisco was treated conservatively for her exertional conditions. As to the non-exertional condition, she was also found not significantly affected in that she retained the ability to function properly in a work setting. Both the medical evidence of record and the vocational expert's testimony supported the ALJ's determination that plaintiff was able to perform light, unskilled work, including one wherein she could understand, carry out and remember simple instructions. The general rule is that an expert is needed to assess the extent of functional loss. Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). Such combination was consonant with plaintiff's past relevant work as sewing machine operator. The ALJ can rely

---

[1] 20 C.F.R. §404.1520(e) - a claimant will be found not disabled when he/she retains the residual functional capacity to perform the actual functional demands and job duties of a particular past relevant job.

in consultative and non-examining physicians, as well as may piece together relevant medical facts from the findings and opinions of multiple physicians. Evangelista v. Secretary of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).

In the present case, the ALJ availed himself of the testimony of the vocational expert to ascertain that plaintiff's past relevant work was consonant with the residual functional capacity, which in turn was consonant with the medical record. Said residual functional capacity assessment was sustained by the evidence of record and the consultative examining and non-examining physicians, as well as by the testimony of the medical expert who testified at the administrative hearing, Dr. Malaret.[2] The ALJ was entitled to rely on these testimonies, which together with the remaining medical record, was substantial evidence in support of the determination that plaintiff Agostini-Cisco could perform her past relevant work and, thus, at step four was found not to be under disability.

## CONCLUSION

For the reasons above discussed, this United States Magistrate Judge finds the decision of the Commissioner is supported by substantial evidence in the record as a whole and shall be AFFIRMED.

---

[2] Dr. Malaret testified the plaintiff's lumbar and neck discogenic conditions would allow exertion in the lifting of weight of no more than twenty pounds. (Docket No. 10, Transcript p. 42). She can remain standing four at least six hours and sitting, without limitation. (Id., p. 43). Lifting frequently was limited to ten pounds. (Id., p. 44). There were some environmental limitations as to being too cold, too hot, dusty, with chemical odors, strong smells. (Id., p. 46).

Nilda I. Agostini-Cisco v. Commissioner of S.S.
Civil No. 11-1950 (CVR)
Opinion and Order
Page No. 14

---

Judgment is to be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 12th day of February of 2013.

                      S/CAMILLE L. VELEZ-RIVE
                      CAMILLE L. VELEZ RIVE
                      UNITED STATES MAGISTRATE JUDGE